IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Scott Franklin Miles, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Michael J. Astrue, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 6:11-2740-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on May 28, 2009, respectively, alleging that he became unable to work on April 2, 2009. The applications were denied initially and on reconsideration by the Social Security Administration. On June 2, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and William W. Stewart, an impartial vocational expert, appeared on April 21, 2010, considered

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the case *de novo*, and on May 11, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on September 21, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since April 2, 2009, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Hidradenitis; cycstic acne; and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) that is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in and eight-hour workday; and walking six hours in an eight-hour workday. The claimant should have no concentrated exposure to extremes of hot temperatures, humidity, and sunlight. The claimant is limited to unskilled work and should have no contact with the public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on October 22, 1976, and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404. Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The

4

Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff has received medical treatment for severe acne since at least February 2006; diagnoses included hidradenitis[2] and cystic acne (also known as acne vulgaris); treatment included medication, injections, and topical creams (Tr. 204-05, 209-22, 226-27, 232).

In June 2008, the plaintiff told Dina Grice, M.D., that he had been on leave for two weeks and that he was unable to work due to acne pain. The plaintiff reported depression and suicidal ideation as a side effect of his acne medication (Acutane). Dr. Grice adjusted his medication and observed that "[c]linically, his current symptoms seem fairly mild," adding, "I really do not know, at this point, what to do therapeutically" (Tr. 216-18; *see also* Tr. 204 (noting "[m]inimal findings on exam today with the exception of scarring and a single active cyst")). That same month, the plaintiff told Wayne Black, M.D., that he wanted disability based on his hidradenitis/acne, but Dr. Black did not feel that this was appropriate since there were alternate treatment options (Tr. 227; *see also* Tr. 215).

In August 2008, Dr. Grice told the plaintiff's wife that, "based on skin examination @ last visit his symptoms are out of proportion to skin lesions and that this shouldn't limit his ability to work" (Tr. 212). In a letter to Dr. Black, Dr. Grice noted that, while the plaintiff had experienced significant hidradenitis and cystic disease in the past, she had "not recently seen more than 1-2 small, active lesions and do not feel that their level of inflammation would result in the degree of pain which he describes." She concurred with another doctor's comment that the plaintiff's reported medication side effects "were somewhat strange and sudden in their onset" and that "his reported symptoms are not typical reactions seen on these medications." Dr. Grice stated that she could not "see what

---

[2] Hidradenitis suppurativa is a severe form of acne marked by the presence of blackheads and one or more red, tender bumps (lesions). *See* http://www.mayoclinic.com/health/hidradenitis-suppurativa/DS00818 (last visited April 12, 2012).

would prevent him from working, nor can I advocate disability based upon the clinical findings" (Tr. 209-10).

During this time period, the plaintiff also received treatment for high blood cholesterol levels (hyperlipidemia) and hypertension. In February 2009, Dr. Black noted that the plaintiff's hypertension was not controlled (Tr. 228-31).

In April 2009, the plaintiff told J. Edward Golay, M.D., that he took a friend's cannabinoid medication (Marinol) "and actually improved." The plaintiff said that "at the moment he is at his best." He admitted a history of alcohol abuse and said he currently consumed about one pint of alcohol per week (Tr. 237). In May 2009, the plaintiff reported that he got "significant rash increase" with sun exposure; Dr. Golay noted "[s]un sensitivity" and prescribed anti-bacterial soap and antibiotic medication, as well as medication for the plaintiff's reported pain (Tr. 236-37). In June 2009, Dr. Golay noted "significant enlargement" of a nodule on the plaintiff's upper left thigh and adjusted his medication (Tr. 236).

In July 2009, the plaintiff reported that he lived with his wife and their two children. His activities included preparing at least simple meals, doing light vacuuming, loading the dishwasher, playing video games, playing the guitar, and driving. The plaintiff denied being able to use a checkbook or handle a savings account and asserted that his wife handled money and bill paying. The plaintiff also denied spending time with others and asserted that he did not handle stress or changes in routine well, but stated that he got along "well" with authority figures, followed spoken instructions "pretty good" and written instructions "well," and finished what he started (Tr. 153-61).

In July 2009, the plaintiff reported depression and said that he was afraid to go out because he thought that his genital and armpit areas would have an odor; Dr. Golay started him on a trial of anti-depressant medication. Dr. Golay stated that the plaintiff had "essentially failed most treatments for hydradenitis, including multiple antibiotics." Dr. Golay

7

found on examination that the plaintiff had "some pustules" in the armpit and groin area (which were "a little tender") but "no deep abscesses at present" (Tr. 286). Also in July 2009, Dr. Golay assessed the plaintiff with depression and social withdrawal and said that the plaintiff had "serious" work-related limitations in functioning as a result of his depression. Dr. Golay stated that he had prescribed anti-depressant medication, but that it was too early to tell whether the medication had helped the plaintiff's condition. Nevertheless, Dr. Golay said that, despite having a depressed mood and withdrawn affect, the plaintiff was fully oriented, with intact thought processes, appropriate thought content, and adequate attention, concentration, and memory. Dr. Golay did not recommend psychiatric care (Tr. 235).

In October 2009, the plaintiff presented to A. Nicholas DePace, Ph.D., for a psychological evaluation in relation to his application for Social Security disability benefits (Tr. 246-50). He drove himself to the appointment (Tr. 248). The plaintiff said that he last worked in June 2009 when he managed a construction crew and drove an 18-wheeler for his family's business (Tr. 246). Although he previously asserted that he could not handle a checkbook, the plaintiff admitted that he had a checking account and was able to manage money for the family (*compare* Tr. 157 *with* Tr. 247). And, although the plaintiff admitted in April 2009 to regularly consuming alcohol, he asserted that he had not consumed alcohol in more than a year and a half (*compare* Tr. 237 *with* Tr. 247). The plaintiff said that he was obtaining Marinol from a friend (*i.e.*, without a prescription) for pain management. The plaintiff also reported taking "significant amounts of [prescription] painkillers" (Tr. 247). The plaintiff said that he interacted only with his family, but acknowledged having a "supportive extended family, which is very helpful for him" (Tr. 246). Dr. DePace diagnosed depressive disorder and alcohol dependence (in sustained full remission). Dr. DePace found that the plaintiff "appear[ed] to have some difficulties with concentration" but did not identify any other limitations in mental functioning (Tr. 248-49).

8

Dr. Golay saw the plaintiff on two occasions in October 2009. His treatment notes contain minimal examination findings; however, Dr. Golay noted that he had completed Department of Transportation forms necessary to renew the plaintiff's commercial driver's license (Tr. 270).

In January 2010, the plaintiff told Dr. Golay that he was unable to work, but admitted that he had been "rid[ing]" around with this dad in his painting business." With regard to depression, the plaintiff denied suicidal intent but expressed "feelings of sadness based on his health care problems." Dr. Golay noted hidradenitis on the left side of the plaintiff's head and his armpit (axillary) and waistline; he referred the plaintiff to another doctor for excision of an irregular lesion near his right ear, which was benign (Tr. 285; *see also* Tr. 276-80).

In early March 2010, Dr. Golay stated that the plaintiff's hidradenitis was "stable" and his depression was "improved" (Tr. 284). Later that month, Dr. Golay noted that the plaintiff had two cysts near his belt line. The plaintiff also reported a possible cyst in the rectal area; however, Dr. Golay was not able to confirm this on examination. The doctor adjusted the plaintiff's medication and said that a warm bath covering his hips (sitz bath) might help (Tr. 284).

In April 2010, the plaintiff presented to Pierre Jaffe, M.D., for an initial evaluation and reported "sever[e] facial pain" (Tr. 313). The plaintiff returned to Dr. Jaffe later that month for treatment of cysts in his genital area, in early May 2010 for treatment of cysts on his trunk, and in late May for treatment of cysts on his face and neck (Tr. 312, 351-52).

Also in late May 2010, Dr. Golay noted that the plaintiff had "significant photosensitivity rash," could not be out in the sun, and was on a "photosensitivity regimen" including dietary supplements (Heliocare). Dr. Golay instructed the plaintiff to follow up with Dr. Jaffe for treatment of his acne (Tr. 316).

9

The plaintiff returned to Dr. Jaffe two times in June 2010 (Tr. 349-50). In August 2010, Dr. Golay noted that the plaintiff "stay[ed] out of the heat and sun and does a lot better." Dr. Golay also noted that a new medication used to treat skin infections (Dapsone) "seem[ed] to help." The plaintiff reported "spells of weakness, relieved by eating," which Dr. Golay attributed to low blood sugars.[3] On examination, Dr. Golay noted a "[l]ittle bit of hidradenitis under [his] arms, [which was] mildly tender but not bad" (Tr. 316-17).

On February 21, 2011, Dr. Golay examined the plaintiff and stated that the plaintiff experienced a photosensitivity rash and "significant pain" when exposed to sunlight and that the plaintiff was "disabled due to his inability to attend work because he will have to be outside." Dr. Golay did not identify any limitations on the plaintiff's ability to work indoors and stated that the plaintiff's inability to work was "based on the significant pain [the plaintiff] has when there is photo exposure" (Tr. 342). In a letter to the plaintiff's attorney dated February 21, 2011, Dr. Golay stated that the plaintiff had been "rendered disabled due to his inability to work from photosensitivity and the resultant acneiform eruption." He noted this caused the plaintiff a "good deal of pain and swelling about facial area especially." Dr. Golay also noted that the plaintiff had uncontrolled hypertension and hyperlipidemia, that he would try to treat (Tr. 332).

On February 22, 2011, Dr. Jaffe stated in a letter to the plaintiff's attorney that the plaintiff's condition "ha[d] progressed to where he can no longer work," that the plaintiff was "substantially disabled" by cysts and photosensitivity, and that the plaintiff's condition "prevent[ed] him from lifting, standing, or sitting for long periods of time" (Tr. 344).

---

[3] In December 2010, the plaintiff went to the emergency room and reported a dizzy spell the previous afternoon, which he estimated to last for 15-20 minutes. A care provider instructed him to drink more fluids for better hydration, told him that he should not drive if he had any lightheadedness or weakness, and gave him an ambulatory echocardiography device (Holter monitor) for monitoring of his cardiovascular system; the Holter monitor results were normal (Tr. 325-26, 336).

During the administrative proceedings, State agency doctor Elva Stinson, M.D., reviewed the record and opined that the plaintiff had not established any exertional limitations, but that he should avoid concentrated exposure to humidity and extreme heat (Tr. 238-45). State agency psychologists Manhal Wieland, Ph.D., and Lisa Klohn, Ph.D., reviewed the record and opined that the plaintiff could attend to and perform simple tasks without special supervision; attend work regularly (although he might miss an occasional day of work due to his mental impairments); make simple work-related decisions and occupational adjustments; adhere to basic standards for hygiene and behavior; protect himself from normal workplace safety hazards; travel to and from work independently; and relate appropriately to supervisors and co-workers (although he might be better suited for a job that did not require regular work the general public) (Tr. 266-28, 307-10; *see also* Tr. 252-56, 293-306).

The plaintiff also received treatment for his cholesterol and blood pressure after the alleged onset of disability (Tr. 236, 270, 284-86, 316, 332, 342). In May 2010, State agency medical consultant James Weston, M.D., reviewed the record and found that the plaintiff's blood pressure and cholesterol levels were controlled without complications (Tr. 314). In February 2011, Dr. Golay noted that the plaintiff had been unable to afford his medications and that his cholesterol and blood pressure levels were uncontrolled (Tr. 342).

The plaintiff was represented by counsel during the administrative hearing (Tr. 27). The plaintiff said that most of his past work had been as a supervisor in a family-owned construction business. He said that he stopped working "because I was not allowed to be in the sun" (Tr. 37-38). The plaintiff said that he had tried to go back to driving a truck, but that "they won't allow me to do it because of the medications that I take" (Tr. 37). The plaintiff asserted that he experienced dizziness and blurred vision as mediation side effects (Tr. 42). He also asserted that a doctor told him that it "would be safer for me not to drive because I am having spells and getting into so much pain" (Tr. 34; *cf*. Tr. 326). The plaintiff

initially denied driving, but then admitted that he sometimes drove to pick up his medication and that he picked his children up from school about once a month (Tr. 33-34, 55). The plaintiff still had a commercial driver's license (Tr. 32). He admitted that his commercial driver's license was renewed in October 2009 (after the alleged onset of disability) but asserted that he had he had failed "the test" to renew his commercial driver's license "maybe two or three months ago" (Tr. 33). However, the plaintiff admitted that no one had told the Department of Transportation that he should not be driving (Tr. 34).

The plaintiff said that his condition was impacted by heat and sun and that he had good days and bad days (Tr. 45-47). He said that he experienced flare-ups in his acne about two weeks out of the month and that he documented "every single time I have a breakout" (Tr. 52-53; *see* Tr. 334, 346). The plaintiff estimated that he could lift up to 20 pounds, sit for 30 minutes at a time, stand for 20 minutes at a time, and walk 10 to 15 feet (Tr. 46-48). When asked to describe the symptoms of his depression, the plaintiff said that he liked to keep to himself and became aggravated easily and that antidepressant medication did not help (Tr. 49-50). The plaintiff admitted that he did not have any limitations in reading or writing (Tr. 41). His activities included playing the guitar, using a computer, and playing video games (Tr. 56-57).

## ANALYSIS

The plaintiff alleges disability commencing April 2, 2009. He was 32 years old on the alleged disability onset date and was 34 years old on the date of the ALJ's decision. He completed the eighth grade and has past relevant work as a painting supervisor on construction sites (Tr. 127, 147, 151). The ALJ found that the plaintiff's hidradenitis suppurtiva, cystic acne, and depression were severe impairments. The ALJ further determined that the plaintiff could perform work light work limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in and eight-hour workday; and walking six hours in an eight-hour workday. The ALJ found

that the plaintiff should not have concentrated exposure to extremes of hot temperatures, humidity, and sunlight and that he was limited to unskilled work and no contact with the public.  The plaintiff argues the ALJ erred in (1)  failing to consider the limiting effects of all of his impairments in determining his residual functional capacity ("RFC"); (2)  failing to properly evaluate his credibility; and (3)  failing to properly consider the opinions of his treating physicians.

### *Residual Functional Capacity*

The plaintiff argues that the ALJ erred in the RFC determination. Social Security Ruling 96-8p, 1996 WL 374184, provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted).  Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The plaintiff argues that the ALJ failed to consider the limiting effects of his hypertension and hyperlipidemia, which the ALJ found to be nonsevere impairments, along with evidence of photosensitivity, in evaluating his RFC (pl. brief 3-4).  This court disagrees. In evaluating the plaintiff's RFC (Tr. 14-19), the ALJ explicitly discussed the evidence of hyperlipidemia (Tr. 12, 17) and hypertension (Tr. 12, 17). The ALJ specifically noted that the record showed that the plaintiff's hypertension and hyperlipidemia were "generally

controlled with medication" (Tr. 12 (citing State Agency consultant who stated in May 2010 that the plaintiff's blood pressure and cholesterol were well controlled without complications (Tr. 314)). The plaintiff does not state what additional limitations resulting from the hypertension and hyperlipidemia should have been included in the RFC assessment (*see* pl. brief 3-4). Moreover, the ALJ specifically considered the evidence in the record of photosensitivity as a symptom of the plaintiff's skin impairments (Tr. 15-18). In the RFC assessment, the ALJ specifically limited the plaintiff to no concentrated exposure to extremes of hot temperatures, humidity, and sunlight (Tr. 14). As will be discussed further below, substantial evidence supports the ALJ's finding that, despite his combined impairments, the plaintiff retained the ability to do a reduced range of unskilled light work (Tr. 14). Based upon the foregoing, this allegation of error is without merit.

***Credibility***

The plaintiff next argues that the ALJ failed to properly consider his credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor

recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)    the individual's daily activities;
>
> (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)    factors that precipitate and aggravate the symptoms;
>
> (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his

15

pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id.* at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

The ALJ found that while the plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 15). The ALJ correctly observed that several of the plaintiff's treatment providers questioned his reports of disabling symptoms and extreme medication side effects (Tr. 15, 17; *see, e.g.* Tr. 209-10, 212, 215, 227). Dr. Grice and Diana Antonovich, M.D., both opined that the plaintiff's reported acne medication side effects "were somewhat strange and sudden in their onset," and were "not typical reactions seen on these medications." Dr. Grice observed that she had "not recently seen more than 1-2 small, active lesions and d[id] not feel that their level of inflammation would result in the degree of pain which he describes. Dr. Grice concluded that she could "not see what would prevent him from working" (Tr. 209). Dr. Black also declined to provide a statement that the plaintiff was disabled (Tr. 215, 227). The ALJ reasonably found that, although prior to the alleged onset of disability, these doctors' comments raised questions about the plaintiff's subjective reports (Tr. 17). *See* 20 C.F.R. § 404.1529(c)(4) (ALJ may consider inconsistencies in the evidence); *Craig*, 76 F.3d at 595 (same).

The ALJ also correctly observed that in October 2009, after the alleged onset of disability, Dr. Golay completed Department of Transportation paperwork necessary to renew the plaintiff's commercial driver's license (Tr. 16; *see* Tr. 33, 270). The ALJ reasonably inferred that "at this point Dr. Golay did not think the claimant was disabled because he certified the claimant was capable of driving commercial trucks," and reasonably found that the plaintiff's physical condition had remained generally stable since October 2009 (Tr. 16-17). While the plaintiff experienced some exacerbations in his skin condition in early 2010, the record shows that his condition responded to treatment (Tr. 16; *see, e.g.*, Tr. 284-86, 312, 316, 351-52). The record also showed that the plaintiff's depression responded to treatment (despite his testimony to the contrary) and that he was

17

never referred to a mental health specialist (Tr. 19; *see, e.g.*, Tr. 284), which further supports the ALJ's decision to discount the plaintiff's subjective statements. *See* SSR 96-7p, 1996 WL 374186, at *6-7; *Craig*, 76 F.3d at 595 (recognizing that, while a claimant's allegations may not be discredited solely because they are not substantiated by objective evidence of the pain itself, they need not be accepted to the extent they are inconsistent with the available evidence, including the objective medical evidence).

The ALJ also correctly observed that the plaintiff made inconsistent statements about alcohol consumption and that he used Marinol without a prescription (Tr. 12-13; *see, e.g.*, Tr. 237 (Marinol use without prescription), 247 (same), 325 (same); *compare* Tr. 237 (admitting, in April 2009, that he regularly drank alcohol) *with* Tr. 247 (asserting, in October 2009, that he stopped drinking alcohol one and a half years ago) and Tr. 325 (noting regular alcohol consumption in December 2010) and Tr. 50 (testifying, in April 2011 that he stopped drinking one year earlier)). These were additional valid reasons for finding the plaintiff's statements not fully credible. *See* 20 C.F.R. § 404.1529(c)(4); *Craig*, 76 F.3d at 595; *see also Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) ("[The claimant's] misrepresentations as to the use of alcohol and exactly when she quit taking drugs was properly taken into account when considering her overall credibility.").

The ALJ also considered evidence of the plaintiff's daily activities, which included preparing at least simple meals, doing light vacuuming, loading the dishwasher, playing the guitar, playing video games, driving (for instance, to pick up medication or pick his children up from school), and riding around with his father in his painting business (Tr. 15-16; *see* Tr. 33-34, 55-57, 153-61, 285). This was an appropriate consideration in evaluating the plaintiff's assertions regarding extreme limitations in functioning. 20 C.F.R. § 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's daily activities); *Johnson*, 434 F.3d at 656 n.8 (finding a claimant's activities supported a finding she was not disabled).

The plaintiff asserts that the ALJ's credibility finding is contradicted by Dr. DePace's statement, after a one-time examination, that he did not observe any "significant evidence . . . that Mr. Miles was attempting to fabricate problems or exaggerate existing ones" (pl. brief 4 (citing Tr. 249)). The ALJ was charged with evaluating credibility based on "the entire case record." SSR 96-7p, 1996 WL 374186, at *1. Here, Dr. DePace's statement was based on a one-time examination, as he acknowledged (Tr. 249). As pointed out by the Commissioner, Dr. DePace did not know that, although the plaintiff admitted during his examination that he had a checking account and was able to manage money for his family, the plaintiff had previously asserted (in relation to his application for Social Security benefits) that he was unable to use a checkbook (*compare* Tr. 157 *with* Tr. 247). Further, although the plaintiff asserted during his examination by Dr. DePace that he had not consumed alcohol in more than a year and a half, the plaintiff had just six months earlier admitted to regular, on-going alcohol consumption (*compare* Tr. 237 *with* Tr. 247). Indeed, as discussed, several of the plaintiff's treatment providers questioned his subjective reports (Tr. 15; *see, e.g.*, Tr. 209-10, 215, 227). The court's role is not to re-weigh the evidence. *See Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) ("'The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his.'") (quoting *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964)). Here, the ALJ identified numerous reasons supported by substantial evidence for discounting the plaintiff's subjective statements. Accordingly, this allegation of error is without merit.

### Opinion Evidence

The plaintiff next argues that the ALJ failed to give adequate weight to the opinions of two treating physicians, Drs. Golay and Jaffe. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-

19

exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

In February 2011, Dr. Golay stated that the plaintiff experienced a photosensitivity rash and "significant pain" when exposed to sunlight and that the plaintiff was "disabled due to his inability to attend work because he will have to be outside" (Tr. 342). However, Dr. Golay did not identify any limitations on the plaintiff's ability to work

indoors (Tr. 342). The ALJ considered Dr. Golay's opinion, and found that it was inconsistent with the treatment record (Tr. 17; *see, e.g.*, Tr. 284-86, 316). Specifically, the record showed that, in October 2009, Dr. Golay completed Department of Transportation paperwork necessary to renew the plaintiff's commercial driver's license (suggesting that, at that time, Dr. Golay did not think the claimant was disabled), and the plaintiff's physical condition remained generally stable after October 2009 (Tr. 16-17; *see, e.g.*, Tr. 33, 270, 284-86, 312, 316, 351-52). These inconsistencies provided valid reasons for discounting Dr. Golay's February 2011 opinion regarding disability.

   Furthermore, although the ALJ discounted Dr. Golay's opinion, the ALJ's decision was in many respects consistent with the doctor's opinion. Dr. Golay's opinion, on its face, limited the plaintiff's ability to do outdoor work. While the ALJ rejected Dr. Golay's statement that the plaintiff was "disabled," the ALJ found that the plaintiff should not do work involving concentrated exposure to extremes of hot temperatures, humidity, and sunlight and relied on indoor factory jobs (such as assembler, hand sorter, and machine tender) in finding the plaintiff not disabled (Tr. 14, 21). *See Dictionary of Occupational Titles* ("*D.O.T.*") 706.684-022, 1991 WL 679050 (stating exposure to weather is not present in the light assembler position); *D.O.T.* 789.687-146, 1991 WL 681286 (same for the light hand sorter position); *D.O.T.* 920.685-082, 1991 WL 687943 (same for the light machine tender position); *D.O.T.* 734.687-082, 1991 WL 679966 (same for the sedentary hand sorter position); *D.O.T.* 781.682-010, 1991 WL 680842 (same for the sedentary machine tender position).

   To the extent that Dr. Golay previously opined that the plaintiff had "serious" work-related limitations in mental functioning (Tr. 235), the ALJ correctly observed that Dr. Golay's opinion was undermined by the doctor's own observations that the plaintiff was fully oriented, with intact thought processes, appropriate thought content, and adequate attention, concentration, and memory, and by the doctor's own statement that psychiatric

care was not warranted (Tr. 19; *see* Tr. 235). Nevertheless, the ALJ limited the plaintiff to unskilled work with no contact with the public (Tr. 14). *See* SSR 82-41, 1982 WL 31389, at *2 (stating unskilled work is the least complex type of work). Significantly, as argued by the Commissioner, the plaintiff has not challenged the ALJ's evaluation of this opinion in his argument. *See Locklear v. Bergman & Beving*, 457 F.3d 363, 365 n.2 (4th Cir. 2006) (arguments not clearly raised in an opening brief are waived).

In February 2011, Dr. Jaffe stated that the plaintiff's condition "ha[d] progressed to where he can no longer work," that the plaintiff was "substantially disabled" by cysts and photosensitivity, and that the plaintiff's condition "prevent[ed] him from lifting, standing, or sitting for long periods of time" (Tr. 344). Dr. Jaffe's statement that the plaintiff was "disabled" and could "no longer work" pertained to the ultimate issue of disability, which is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Moreover, while he generally stated that the plaintiff could not "lift, stand, or sit for long periods of time," he did not identify specific limitations with regard to these activities. Nonetheless, the ALJ considered Dr. Jaffe's opinion and reasonably found that it was inconsistent with the treatment record (Tr. 17). The record shows that, between April and June 2010, Dr. Jaffe treated the plaintiff for cysts on different areas of his body (Tr. 312, 349-52). In August 2010, Dr. Golay noted that the plaintiff was doing "a lot better" with reduced sun exposure, that a new medication used to treat skin infections (Dapsone) "seem[ed] to help," and that the plaintiff had only a "[l]ittle bit of hidradenitis under [his] arms, [which was] mildly tender but not bad" (Tr. 316-17). This evidence supports the ALJ's finding that the plaintiff's symptoms responded to treatment and were not as limiting as opined by Dr. Jaffe.

In summarizing the treatment record, the ALJ commented that Dr. Jaffe's notes were "difficult to read" (Tr. 17; *see also* Tr. 16 (stating notes were "mostly illegible"). The plaintiff asserts that the ALJ should have recontacted Dr. Jaffe for clarification (pl. brief 6). At the time of the ALJ's decision and the plaintiff's brief in this case, the regulations

provided that an ALJ should recontact a medical source when the evidence was "inadequate . . . to determine whether you are disabled." 20 C.F.R. § 404.1512(e) (effective prior to March 25, 2012).[4]  As discussed above, the regulations permit an ALJ to discount a treating physician's opinion that is inconsistent with the other substantial evidence in the record.  *Id.* § 404.1527(c)(2).  "Rejection of the treating physician's opinion . . . does not by itself trigger a duty to contact the physician for more explanation." *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *see also Bayliss v. Barnhart*, 429 F.3d 1211, 1217 (9th Cir. 2005) (ALJ was not required to recontact doctors before rejecting parts of their opinions).  Here, the ALJ reasonably found that Dr. Jaffe's opinion was inconsistent with the treatment record (i.e., the treatment notes of both Dr. Golay and Dr. Jaffe) (Tr. 17).

Based upon the foregoing, this allegation of error is without merit.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

October 4, 2012
Greenville, South Carolina

---

[4]The regulations were amended effective March 26, 2012, and this subsection was removed.